# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE ROBERTSON, | No. 2:18-CV-1172-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

    Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 4 and 7), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 12 and 13).

    The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 14, 2014. See CAR 13.[1] In the application, plaintiff claims disability began on April 24, 2009. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 5, 2016, before Administrative Law Judge (ALJ) Trevor Skarda. In a January 23, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the cervical spine; right shoulder pain secondary to impingement; and right knee pain secondary to osteoarthritis;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work; overhead reaching and reaching above the shoulder with the right upper extremity no more than occasionally; bending and stooping limited to occasionally; climbing ramps or stairs, kneeling and crouching limited to occasionally; climbing ladders, ropes, or scaffolds is precluded; and she may sit, stand, or walk at one time for no more than 30 minutes, after which time she must take a brief break of about 1 minute to either rest or reposition;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work as a cashier and sales clerk.

See id. at 16-22.

After the Appeals Council declined review on March 8, 2018, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on August 27, 2018 (ECF No. 9).

## III. DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ erred by failing to consider plaintiff's vitamin D deficiency; and (2) the ALJ erred in relying on plaintiff's daily activities to discount her credibility.

### A. **Plaintiff's Vitamin D Deficiency**

Plaintiff contends the ALJ erred by failing to account for her vitamin D deficiency. According to plaintiff:

> The ALJ's failure to mention Ms. Robertson's vitamin D deficiency throughout the entire decision was an error and a bit baffling. Though the ALJ need not mention every piece of evidence, he must at least give an explanation of a decision to reject significant probative evidence. *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984). Considering the fact that a substantial portion of the hearing was used to address Ms. Robertson's vitamin D deficiency (*HE TRAN* at 2, 3, 6, 9, 10, l2, 13, 15, 16, 17, 18) and that her sickly condition was alleged to potentially be due to the deficiency (*Id*. at 5, 7, 10), one would assume that any evidence regarding the deficiency may qualify as substantial probative evidence.
> One argument or reason for its absence from the opinion may be that there was not enough objective evidence that the deficiency was causing her ailment, for the ALJ to address it. However, the combination of the following, presumably should have warranted at the least a reference to the condition in the decision: (1) the lab tests that showed a deficiency or insufficiency (6F-26, 20); (2) the two reports that listed vitamin D as an allergy (6F-2; 8F-5); (3) the claim by Ms. Robertson that her body was not responding well to the vitamin D or the medication to supplant the vitamin D (*HE TRAN* at 9, 13); and (4) the ALJ's own observation of Ms. Robertson's ill appearance at the hearing (*Id*. at 5, 7, 20). (footnote omitted).
> Further, there was a clear conflict between conflict between [sic] the orthopedic CE's seemingly "ludicrous" report (*HE TRAN* at 2), and Ms. Robertson's physical appearance at the hearing. It is the ALJ's role to interpret the evidence and resolve conflicts and ambiguities. *See Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989). The ALJ clearly attempted to do this by ordering an IM CE and it is understandable that he would place great weight on that opinion. However, in Dr. Sharma's review of the records, she appears to have overlooked the lab results from Quest Diagnostic showing vitamin D deficiency considering that she included significant others from the same lab. (9F-3). This left open the issue of the effect Ms. Robertson's vitamin deficiency has on her ability to work and it was never resolved in the decision.
> With the vitamin D deficiency appearing to be a fairly important factor in making a determination of disability, its absence from the decision casts doubt on the validity of the decision.

///

///

The ALJ need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See id. As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity. Id.

Plaintiff has not demonstrated that evidence of a vitamin D deficiency is probative or relevant on the issue of disability. Plaintiff cites four facts in support of her argument: (1) lab tests show a vitamin D deficiency; (2) plaintiff is allergic to vitamin D; (3) plaintiff does not respond well to replacement vitamin D medication; and (4) the ALJ observed plaintiff appeared ill at the hearing. At most, these facts merely establish plaintiff has problems related to vitamin D. None of these facts suggest in any way what functional limitations on plaintiff's ability to work may or may not arise from these problems. As the disability determination is based on a claimant's residual functional capacity in terms of work-related activities, plaintiff's facts related to vitamin D problems are not relevant.

Even if the court were to conclude the ALJ's failure to discuss evidence related to plaintiff's vitamin D problems constituted error, any error would be harmless. To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] An impairment, or combination of impairments, can only be found to be non-severe if the evidence

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

As discussed above, the court finds plaintiff has failed to demonstrate how vitamin D problems affect her ability to work. Therefore, even had the ALJ discussed plaintiff's vitamin D problems, the result would have been the same because plaintiff has not met her burden of showing more than a non-severe impairment. See Stout v. Commissioner of Social Security, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding that the ALJ's failure to consider uncontradicted lay witness testimony could be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination"); see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).

**B.      Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

At Step 4, the ALJ considered the credibility of plaintiff's statements and testimony in determining plaintiff's residual functional capacity. See CAR 17-19. The ALJ stated:

> On her alleged onset date, the claimant was a 47-year-old female with a high school education. She alleged that she was unable to perform basic work activities following a car accident in April 2009 because of arthritis of the right knee and torn rotator cuff in right shoulder. However, she reported that her symptoms worsened around April or May of 2015. Because of her symptoms, the clamant alleged that she had difficultly lifting more than about ten pounds, standing about 30 minutes at a time, walking, sitting about 30 minutes at a time, bending balancing, kneeling, climbing up stairs, and finishing chores. However, she reported that she was able to do dishes, do laundry, do house cleaning such as sweeping the floors, take out the garbage, take care of her mother and a couple of dogs, drive a car, shop for groceries, and mow the lawn. The claimant reported that her symptoms were treated with occasional, but not consistent, pain medications. In addition, she reported that she used her mother's cane for walking (Exhibits 2E, 4E, 6E, 8E, 12E, 13E, 14E, 22E, and Hearing Testimony).

CAR 17.

///

///

9

Plaintiff argues the ALJ erred in citing daily activities as a reason to discount the credibility of her statements and testimony. Plaintiff contends:

> This [ALJ discussion] shows that Ms. Robertson's daily activities were used to damage her credibility and discount her subjective complaints, and there are four additional instances throughout the decision in which they served to cast doubt upon Ms. Robertson's disability status. (*Id*. at 5, 8, 9). A specific example of some significance is the ALJ's statement that, "[b]ecause of her symptoms, the claimant alleged that she had difficulty lifting more than about ten pounds, standing about 30 minutes at a time, walking, sitting about 30 minutes at a time . . . [h]owever she reported that she was able to [perform the afore mentioned daily activities]." (*Id*. at 5). This is significant because, while the ALJ decided to include the thirty minute limitations in the RFC, in spite of the Dr. Sharma's opinion, he excluded the alleged ten pound lifting limitation; the inability to lift over ten pounds would have presumably led to a limitation to sedentary work and subsequently a GRID rule.(footnotes omitted). The exclusion of the limitation leads to the assumption that Ms. Robertson's daily activities—without explaining which—would require the ability to lift more than ten pounds. It would appear that a limitation to sedentary work may have been precluded, due in part to Ms. Robertson's discounted credibility stemming from her ability to perform the alleged daily activities.
> Additionally, while all parties agree that Ms. Robertson's conditions and capabilities worsened around April or May of 2015 (*ALJ DEC* at 5; *HE TRAN* at 19), the daily activities that the ALJ relies upon are a combination of statements gathered from, the hearing on May 5, 2016, the orthopedic evaluation on July 18, 2014 (5F), and the exertional activities questionnaire, dated March 29, 2014 (4E). The only daily activities drawn from the hearing were that Ms. Robertson took care of her mother and took her dogs outside. (*HE TRAN* at 11). Therefore, the symptoms Ms. Robertson alleged to have after her symptoms and condition admittedly worsened, were discounted by mostly activities she stated she was able to do before her condition worsened. Considering Ms. Robertson filed for Title XVI in addition to Title II, this misapplication of evidence was detrimental.
> There may be an argument that Ms. Robertson's daily activities were just one of multiple factors used in determining her credibility, and while technically true, the frequency at which the daily activities were used throughout the opinion as evidence would suggest that they held the most determinative weight. As such, reliance on Ms. Robertson's daily activities to discount her credibility was improper.

Here, the ALJ cited plaintiff's daily activities, as well as plaintiff's course of treatment. Notably, the ALJ observed plaintiff's symptoms were controlled with occasional pain medication. Moreover, to the extent plaintiff used a cane for ambulation, it was not a cane prescribed to plaintiff, but a cane belonging to her mother. Indeed, plaintiff has cited to no evidence indicating she has been prescribed a cane. Plaintiff is correct in stating that factors other

///

than daily activities undermine her credibility. See Smolen, 80 F.3d at 1284 (holding the ALJ may consider factors including course of treatment).

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;
2. Defendant's motion for summary judgment (ECF No. 13) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  May 8, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE